# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:16-CR-42** |
| | : | |
| v. | : | **(Chief Judge Conner)** |
| | : | |
| **YALIN LIU,** | : | |
| | : | |
| **Defendant** | : | |

## **MEMORANDUM**

Presently before the court in the above-captioned action is a motion (Doc. 241) to dismiss the indictment by defendant Yalin Liu ("Liu"). Liu seeks dismissal of all the charges against him pursuant to Federal Rule of Criminal Procedure 12(b)(3). For the reasons that follow, the court will deny Liu's motion.

**I.**     **Factual Background & Procedural History**

On February 24, 2016, a grand jury sitting in Harrisburg, Pennsylvania, returned an indictment against Liu and thirteen codefendants, charging a number of offenses related to the fraudulent procurement of motor vehicle insurance and state and federal licenses to operate commercial bus carriers. (Doc. 1). Specifically, the indictment charges Liu and others with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349 (Count I); mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Counts II through IX)[1]; and conspiracy to defraud the United States and to commit other federal offenses, in violation of 18 U.S.C. § 371 (Count X).

---

[1] Liu contends that the grand jury indictment includes uncharged conduct by citing 18 U.S.C. § 1342, in reference to Counts II through IX. (Doc. 242 at 21 n.8). Liu's argument misconstrues the indictment which charges violations of 18 U.S.C. § 1341 *and* 18 U.S.C. § 2, respectively. (<u>See</u> Doc. 1 at 19, 22).

In order to operate a commercial bus company, bus carriers must comply with numerous state and federal regulations. The Federal Motor Carrier Safety Administration ("FMCSA") requires bus carriers to, *inter alia*, obtain a United States Department of Transportation Number ("USDOT Number") for data collection and monitoring purposes and an "MC Number" representing the bus carrier's operating authority. (Id. ¶¶ 1-3). In order to obtain an MC Number, the bus carrier must submit information regarding its business address, automobile insurance, compliance with safety regulations, and any business affiliations with other bus carriers. (Id. ¶ 3).

The Pennsylvania Department of Transportation ("PennDOT") facilitates the titling, registration, and issuance of license plates for bus carriers in Pennsylvania. (Id. ¶ 5). Qualified bus carriers may obtain insurance coverage for commercial activities through the Pennsylvania Assigned Risk Plan ("the Plan"). (Id. ¶ 4). Pennsylvania established the Plan for the equitable apportionment—among insurers writing motor vehicle liability insurance within the state—of applicants that "are entitled to, but are unable to, procure insurance through ordinary methods." 75 PA. CONS. STAT. § 1741. A multistate commercial bus carrier should apply for assigned risk insurance in the state where its operating headquarters is located. (Doc. 1 ¶ 4). A vehicle is subject to the insurance rates, charges, and rating rules of the state where it is principally garaged. (Id.) The Automobile Insurance Plan Service Office ("AIPSO"), a Rhode Island nonprofit organization, administers the Plan. (Id.)

The indictment alleges that defendants made materially false statements to FMCSA, AIPSO, the Plan, and PennDOT in order to obtain USDOT Numbers, MC Numbers, and Pennsylvania insurance for various commercial bus companies. (Id. ¶ 7). These purported misrepresentations allowed defendants to operate unsafe buses and impede federal and state agencies from carrying out their respective missions. (Id. ¶ 8). Liu is a licensed Pennsylvania insurance producer. (Id. ¶ 19). The indictment alleges that Liu drafted and submitted fraudulent documents to FMCSA, PennDOT, the Plan, and the Pennsylvania Department of State on behalf of his codefendants. (Id.) The purpose of the averred conspiracy was twofold: (1) to fraudulently obtain insurance for defendants' bus companies through the Plan when said companies were not eligible for Plan insurance, (id. ¶¶ 24-25); and (2) to impede and obstruct the administration and enforcement of state and federal regulations relating to the financial responsibility, safety, maintenance, and drivers of commercial bus carriers, (id. ¶ 32).

Liu filed the instant motion (Doc. 241) to dismiss the indictment *in toto*. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

A motion to dismiss a criminal indictment may be brought at any time before trial. See FED. R. CRIM. P. 12(b)(3). A motion to dismiss the indictment may allege a defect in instituting the prosecution, including improper venue, violation of the constitutional right to a speedy trial, or selective prosecution. See FED. R. CRIM. P. 12(b)(3)(A). A motion to dismiss may also be premised on perceived substantive deficiencies, including duplicity or multiplicity in the indictment, lack of specificity,

3

improper joinder, or failure to state an offense. See FED. R. CRIM. P. 12(b)(3)(B). In the context of a motion to dismiss, the court is obliged to test the sufficiency of the government's *allegata* but not the sufficiency of the government's *probata*. United States v. Huet, 665 F.3d 588, 594-95 (3d Cir. 2012). The court must decide every pretrial motion before trial unless good cause exists to defer its ruling. See FED. R. CRIM. P. 12(d).

**III. Discussion**

The indictment charges Liu with one count of conspiracy to commit mail fraud and wire fraud, eight counts of mail fraud, and one count of conspiracy to defraud the United States and commit other federal offenses. Liu's motion raises manifold arguments testing the sufficiency of the indictment. We begin with Liu's arguments concerning the mail and wire fraud counts.

**A. Mail Fraud**

An indictment charging mail fraud in violation of 18 U.S.C. § 1341 must allege (1) a scheme or artifice to defraud, (2) knowing and willful participation by the defendant with specific intent to defraud, and (3) used of the mails in furtherance of the scheme or artifice to defraud. Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 105 (3d Cir. 2012); United States v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004). Counts II through IX allege mail fraud.[2] Liu advances arguments against the sufficiency of the indictment as to each element of mail fraud.

The mail fraud statute is limited in scope to protection of money and property. United States v. Bryant, 655 F.3d 232, 248 (3d Cir. 2011). The object of an

---

[2] Counts II through IX incorporate Count I by reference. (Doc. 1 ¶ 26).

4

alleged scheme or artifice to defraud must be a "traditionally recognized property right." Hedaithy, 392 F.3d at 590; see also United States v. Henry, 29 F.3d 112, 115 (3d Cir. 1994) (citing United States v. Evans, 844 F.2d 36, 41 (2d Cir. 1988)). An intangible item may be protected by the mail fraud statute when it constitutes a traditional property interest. Hedaithy, 392 F.3d at 592, 598 (citing Carpenter v. United States, 484 U.S. 19, 25 (1987)). The item fraudulently obtained must be property "in the hands of the victim." Id. at 592-93 (quoting Cleveland v. United States, 531 U.S. 12, 15 (2000)).

The indictment identifies a legally sufficient object of defendants' scheme or artifice to defraud. Specifically, the indictment alleges that defendants sought to obtain insurance from an insurance company participating in the Plan that they were not otherwise entitled to. (Doc. 1 ¶ 24). Fraudulently obtaining insurance under the Plan allowed defendants to realize a significant financial benefit from reduced insurance rates. (Id.) The alleged scheme deprived Plan insurers[3] of the right to exclusively control their assets—namely, the impact on resources of additional indemnification obligations that they would not ordinarily undertake. See United States v. Carpenter, 190 F. Supp. 3d 260, 265 (D. Conn. 2016); United States v. Baroni, No. 2:15-CR-00193, 2016 WL 3388302, at *8 (D.N.J. June 13, 2016); see also Carpenter, 484 U.S. at 26-27; Hedaithy, 392 F.3d at 595-96. Moreover, defendants' purported fraud imposed considerable risk of harm on all others

---

[3] Liu asseverates that the indictment fails to identify specific victims the defendants schemed to defraud. (Doc. 242 at 14). The indictment need not include the identities of mail fraud victims because those names "do not constitute elements of the mail fraud offense." United States v. Banks, 300 F. App'x 145, 149 (3d Cir. 2008) (nonprecedential) (citing Hedaithy, 392 F.3d at 590).

5

properly insured under the Plan by unnecessarily increasing their shared financial risk. The indictment sufficiently alleges a scheme to defraud another of property.

A defendant possesses the requisite specific intent to defraud when he willfully participates in a scheme to defraud and knows of the scheme's fraudulent nature. Hedaithy, 392 F.3d at 590; United States v. Pearlstein, 576 F.2d 531, 537 (3d Cir. 1978); see also United States v. Andrews, 811 F. Supp. 2d 1158, 1171 (E.D. Pa. 2011). The indictment alleges that Liu drafted, prepared, and submitted fraudulent documents to various entities on behalf of the other defendants. (Doc. 1 ¶ 19). The indictment further avers that all defendants "knowingly and intentionally" agreed to devise a scheme to defraud. (Id. ¶ 23). Liu's contention that the indictment fails to state that he knew the information provided by his clients was false goes to the sufficiency of the evidence rather than the adequacy of the government's allegations. See Huet, 665 F.3d at 594-95. The indictment properly charges that Liu acted with specific intent to defraud.

Liu's challenge to the final mail fraud element likewise fails. The government must only allege that use of the mails was "incident to an essential part of the scheme [to defraud]." United States v. Yusuf, 536 F.3d 178, 187 (3d Cir. 2008) (quoting Schmuck v. United States, 489 U.S. 705, 710-11 (1989)). The mailing must be undertaken in furtherance of the scheme. Id. (citations omitted). It is sufficient that a mailing was part of the execution or perpetuation of the fraudulent scheme. Id. (quoting Schmuck, 489 U.S. at 712). A defendant causes the mails to be used when he either knows that use of the mails will "follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually

6

intended." United States v. Andrews, 681 F.3d 509, 529 (3d Cir. 2012) (quoting United States v. Bentz, 21 F.3d 37, 40 (3d Cir. 1994)).

Defendants operated commercial bus companies for profit. In order to lawfully operate, commercial bus companies must be properly registered and titled pursuant to state and federal regulations. (Doc. 1 ¶¶ 1, 5). A prerequisite to obtaining title and registration is providing, *inter alia*, proof of insurance. (Id. ¶ 3). Obtaining title and registration is an essential part of the scheme to defraud because, without them, defendants could not lawfully operate the commercial buses and thereby profit from the fraudulently obtained insurance.[4] The indictment specifically claims Liu submitted fraudulent title and registration applications to PennDOT on behalf of his codefendants. (Id. ¶ 19). It is reasonably foreseeable that PennDOT would mail registration documents upon receipt and processing of the fraudulent applications. See Andrews, 681 F.3d at 529. The indictment adequately charges that Liu engaged in fraudulent conduct to cause PennDOT to mail title and registration documents to the commercial bus companies. For all of these reasons, we will deny Liu's motion to dismiss Counts II through IX.

### B. Conspiracy to Commit Mail and Wire Fraud

Count I of the indictment alleges conspiracy to commit mail and wire fraud. To charge conspiracy to commit mail or wire fraud in violation of 18 U.S.C. § 1349, an indictment must assert (1) the existence of an agreement between two or more

---

[4] Liu's argument that the mailings took place six years after the alleged insurance scheme began is of no moment. The mailing of retitling documents was a part of the *perpetuation* of the fraudulent scheme over a number of years. See Yusuf, 536 F.3d at 187.

persons to commit mail or wire fraud, (2) the defendant knowingly joined the conspiracy, and (3) one of the conspirators committed an overt act in furtherance of the conspiracy. See United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002) (quotations omitted); see also United States v. Whiteford, 676 F.3d 348, 357 (3d Cir. 2012); United States v. Berscht, 370 F. App'x 325, 327 (3d Cir. 2010) (nonprecedential). The object of a conspiracy in violation of Section 1349 is the commission of the offense of mail or wire fraud. See 18 U.S.C. § 1349. Liu's challenge to Count I of the indictment is substantially grounded in his arguments against the substantive mail fraud counts. (Doc. 242 at 22-24). For the reasons stated *supra*, and because the indictment clearly alleges that Liu and his codefendants knowingly and willfully agreed and conspired to commit mail and wire fraud, (Doc. 1 ¶¶ 23-24), Liu's motion to dismiss Count I of the indictment will be denied.

### C. Conspiracy Against the United States

An indictment charging conspiracy in violation of 18 U.S.C. § 371 must allege (1) existence of an agreement between two or more persons to achieve an unlawful end, (2) defendant's knowing and voluntary participation in the conspiracy, and (3) an overt act committed by a conspirator in furtherance of the conspiracy. United States v. Rigas, 605 F.3d 194, 206 & n.9 (3d Cir. 2010) (*en banc*) (citations omitted). Section 371 criminalizes a single statutory offense of conspiracy which may have multiple objects, including defrauding the United States and committing other federal offenses. Id. at 206-07 (citing United States v. Alston, 77 F.3d 713, 718 (3d Cir. 1996); United States v. Schramm, 75 F.3d 156, 158 (3d Cir. 1996)). The illegal

8

agreement is criminalized by Section 371, not the substantive offenses serving as the objects of the conspiracy. Id. at 209.

Liu claims the indictment is deficient as to each element of the conspiracy charge under Section 371. He first avers that Count X does not describe an agreement between defendants to achieve a common design or unity of purpose. (Doc. 242 at 31-32). We disagree. The indictment plainly alleges that Liu conspired with codefendants to defraud the FMCSA, an agency of the United States. (Doc. 1 ¶ 31). Liu is charged with knowingly, intentionally, and willfully conspiring and agreeing with codefendants to commit offenses against the United States, to wit: making false statements and representations in violation of 18 U.S.C. § 1001 and falsifying documents to impede, obstruct, and influence proper administration of the FMCSA in violation of 18 U.S.C. § 1519.[5] (Id.) Count X identifies the conspirators' common design to avoid compliance with federal regulations and achieve financial benefits for commercial bus carriers through that noncompliance. (Id. ¶¶ 31-22). The indictment sufficiently alleges an agreement amongst the defendants.

Liu next challenges the two specific offenses identified as objects of the conspiracy. He argues that the object of the conspiracy does not violate 18 U.S.C.

---

[5] Liu asserts that the indictment fails to allege that he knew that the information his clients provided to him was false or that he had a duty to investigate same. (Doc. 242 at 32-33). To the contrary, the indictment explicitly alleges that all defendants "knowingly, intentionally, and willfully" conspired to defraud the United States and commit offenses in violation of 18 U.S.C. §§ 1001 and 1519. (Doc. 1 ¶ 31). None of the statutes invoked in Count X refers to a duty to investigate. See 18 U.S.C. §§ 371, 1001, 1519. Hence, the government was not required to present allegations of a failure to investigate.

9

§ 1519 because the indictment does not assert defendants intended to "impede an *investigation*." (Doc. 242 at 29-30 (emphasis in original)). This argument fails because the statutory language permits alternative allegations. Section 1519 provides that it is unlawful to knowingly falsify, or make a false entry, in any record or document with intent to "impede, obstruct, or influence the investigation *or proper administration* of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519 (emphasis added). The defendant need not know that the "matter" at issue is within the federal government's jurisdiction when falsifying documents. United States v. Norman, 87 F. Supp. 3d 737, 742 (E.D. Pa. 2015) (citing United States v. Moyer, 674 F.3d 192, 208-09 (3d Cir. 2012)). The indictment charges Liu and codefendants with conspiring to falsify applications and forms to thwart the proper administration of the FMCSA in violation of Section 1519. (Doc. 1 ¶¶ 31-32). Liu's challenge to Section 1519 is meritless.

Liu similarly contends that the indictment improperly identifies violations of 18 U.S.C. § 1001 as an object of the conspiracy because it asserts defendants made misrepresentations to both state entities and the FMCSA. (Doc. 242 at 30-31). Section 1001 prohibits the making of materially false statements or representations in "any matter within the jurisdiction . . . of the United States." 18 U.S.C. § 1001(a). False statements or representations may pertain to a matter "within the jurisdiction" of the executive branch of the United States, even if not made to an agency or department thereof. United States v. Starnes, 583 F.3d 196, 208 (3d Cir. 2009). An indictment need not allege that defendants made misrepresentations

with intent or expectation that the state agency would convey the statements to the executive branch agency. See Norman, 87 F. Supp. 3d at 742. The false statement or representation must only "pertain to a matter in which the executive branch has 'the power to exercise authority.'" Starnes, 583 F.3d at 208 (quoting United States v. Rodgers, 466 U.S. 475, 479 (1984)). The indictment adequately alleges that Pennsylvania state entities and a Rhode Island nonprofit organization administer titling and registration of commercial bus carriers, as well as issuance of licenses and insurance policies for same, in accordance with federal regulations promulgated and enforced by the FMCSA. (Doc. 1 ¶¶ 1-5, 30).

Finally, Liu argues that the indictment fails to allege that a conspirator committed an overt act in furtherance of the conspiracy. An overt act is any act performed by a conspirator in furtherance of the conspiracy's objective. United States v. McKee, 506 F.3d 225, 243 (3d Cir. 2007). Liu maintains that the nineteen overt acts identified in Count X were committed by the bus companies and not by Liu or his coconspirators. (Doc. 242 at 28). Liu misapprehends the four corners of the indictment.

The indictment discusses each defendant's role in the conspiracy in Count I and Count X incorporates these descriptions by reference. (Id. ¶ 30). These descriptions include allegations that Liu submitted fraudulent applications for insurance on behalf of other defendants to the Plan, as well as various titling and registration documents to, *inter alia*, the FMCSA, PennDOT, and AIPSO. (Id. ¶ 19). The indictment alleges other defendants engaged in similar conduct. (See, e.g., id. ¶¶ 9-10). It lists multiple overt acts, specifically identifying nineteen separate

11

submissions of documents containing fraudulent information to the FMCSA, PennDOT, AIPSO, and other Pennsylvania entities. (Id. ¶ 36). The submission of these purportedly fraudulent documents was designed to further the conspiracy's goal of obtaining financial benefits through non-compliance with regulations. (Id. ¶¶ 32, 35-36). The indictment's method of setting forth the overt acts does not render it "so defective that it does not, by any reasonable construction, charge an offense." United States v. Vitillo, 490 F.3d 314, 324 (3d Cir. 2007), as amended (Aug. 10, 2007) (citation omitted).

## IV. Conclusion

The court will deny Liu's motion (Doc. 241) to dismiss the indictment. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    January 24, 2018